IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

**CATERPILLAR FINANCIAL SERVICES**
**CORPORATION**                                                                                                   **PLAINTIFF**

**V.**                                                       **CIVIL ACTION NO. 1:22-CV-58-MPM-RP**

**GEORGE RANDLE PRISOCK AND**
**B AND M PROPERTIES, LLC**                                                        **DEFENDANTS**

## ORDER DISMISSING B AND M PROPERTIES, LLC

**I.    Summary**

Cory Myers is the sole member of B and M Properties, LLC ("B and M"), an LLC organized under the laws of Missouri. Myers moved under Fed. R. Civ. P. 12(b)(2) to dismiss the present action for lack of personal jurisdiction. (ECF No.15). In response, Caterpillar moved to substitute B and M for Myers in its complaint for declaratory judgment. The Court granted this motion and substituted B and M as a defendant, and B and M subsequently moved to dismiss the action for lack of personal jurisdiction. (ECF No.23, 28). Accordingly, the issue before this Court is whether it has personal jurisdiction over B and M; this Court finds that it does not. Neither Myers's phone calls nor his sole visit to Mississippi on behalf of B and M constitutes conducting business in the state under the long-arm statute. Therefore, this Court orders the dismissal of B and M from the present action for lack of personal jurisdiction.

**II.    Background**

        **A.  Caterpillar asserts it has a perfected security interest in the two pieces of equipment sold to Cory Myers and his LLC, "B and M".**

George Prisock is a defendant in this action and the original purchaser of the equipment at the heart of this dispute. In 2016, Prisock purchased five pieces of equipment from Puckett Machinery Co.; Puckett assigned each contract to Caterpillar; and Caterpillar perfected its security interest in each with a UCC filing. (Compl., ECF No.1, PageID.2-3). In 2017, Prisock sold two of these pieces of equipment to Cory Myers and his LLC, "B and M." (*Id.* at 3). The equipment sold to Myers was a Caterpillar D6K2 Track Type Tractor (the "Tractor") and a Caterpillar 316EL Hydraulic Excavator (the "Excavator"). (*See id.* at 3). Later, in 2019, Prisock and Caterpillar entered into a Cross-Collateralization Agreement concerning all five pieces of equipment. (*Id.* at 3), even though Prisock had sold the Tractor and Excavator to B & M approximately two years earlier.

### B. B and M has no ties to Mississippi. The same is true of all of its current and former members.

It is undisputed that B and M is an LLC organized under the laws of Missouri, where it currently exists and operates. (*See* Aff. of Corey Myers, ECF No.15-1, PageID.1). B and M buys and develops real property in Missouri. (*See id.* at 2). B and M has never purchased, sold, held, owned or operated real property in Mississippi. (*Id.* at 1-2). Further, B and M has never had any interest in an entity organized in Mississippi or a business incorporated in Mississippi. It also has never had a bank account, business affiliate/partner, or other business dealings in Mississippi. (*See id.* at 2). Moreover, *no current or former B and M member*:

> (1) is, or was, a resident citizen of Mississippi, (2) owns, or owned, property, real or otherwise, in Mississippi; (3) has, or had, any bank accounts [in Mississippi]; (4) has, or had, any business partners in Mississippi, (5) has, or had, business dealings in Mississippi, or (6) owns or holds, or owned or held, any interest in any entity or business incorporated, organized, existing or not, in Mississippi or under Mississippi law.

(*See* ECF No.16, PageID.2). Currently, Myers is B and M's sole member. (*Id.*). He is a resident citizen of Missouri and has been since 1984. (*Id.*).

### C. B and M, by and through its member, Cory Myers, entered into two transactions with Prisock in 2017.

In February 2017, while located in Missouri and working for B and M, Myers came across an internet advertisement, posted by Prisock, displaying the Tractor and the Excavator. Myers did not know Prisock at the time he stumbled across the advertisement. (*Id.* at 2). Intrigued, Myers phoned Prisock on B and M's behalf to discuss the equipment. (*See id.*).

Shortly thereafter, Myers traveled to Mississippi to look at the Excavator; all he did on this trip was look at the equipment. (*See id.*) ("All I did was view that one piece of equipment."). He then returned to Missouri and met with B and M's other members and employees to discuss acquiring the Excavator. (*Id.*). The members agreed to make the purchase, and authorized Meyers to do so on B and M's behalf. (*See id.*). Accordingly, Meyers telephoned Prisock to purchase the Excavator. (*Id.*). On or about March 7, 2017, Prisock delivered the Excavator to B and M in Missouri, provided a Bill of Sale to B and M, and was paid by Myers on B and M's behalf. (*Id.*). This all occurred in Missouri. (*Id.*).

Following the sale, Prisock sent photos to B and M of the Tractor. (*Id.*). Again, Myers discussed purchasing the Tractor with B and M's other members and employees, and telephoned

Prisock to confirm interest. (*Id.*). On or about March 22, 2017, Prisock delivered the Tractor to B and M in Missouri, provided a Bill of Sale to B and M, and was paid by Myers on B and M's behalf. (*Id.*). This all occurred in Missouri. (*Id.*).

> **D. In 2021, Caterpillar repossessed the Excavator and Tractor from B and M in Missouri. In 2022, Caterpillar brought this action, requesting declaratory relief resolving the controversy over the repossession of the equipment in Caterpillar's favor.**

In 2021, Caterpillar repossessed the equipment from B and M in Missouri. (Compl., ECF No.1, PageID.4). Caterpillar claimed that, pursuant to the Cross-Collateralization Agreement signed in 2019, it maintained its valid, perfected security interest in the Excavator and Tractor even if the balance on either piece of equipment was paid in full. (*See id.* at 7, 10). Caterpillar now requests that this Court grant declaratory relief resolving any controversy over the repossession of the equipment in Caterpillar's favor. (*Id.* at 10).

In response, Myers filed a motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). (*See* ECF No.15) (*See also* ECF No.16) (memorandum in support of motion to dismiss). Caterpillar then moved to substitute B and M for Myers in its complaint for declaratory judgment. The Court granted this motion and substituted B and M as a defendant. (Doc. 23.).

## III. Discussion

When a "nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident. The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Allred v. Moore & Peterson*, 117 F.3d 278, 281 (5th Cir. 1997) (quoting *Stuart v. Spademan,* 772 F.2d 1185, 1192 (5th Cir.1985)). The plaintiff is required to present only prima facie evidence. *Pervasive Software, Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 219 (5th Cir. 2012). In assessing whether a prima facie case for jurisdiction exists, this Court "must accept as true [a plaintiff's] uncontroverted allegations, and resolve in its favor all conflicts between the jurisdictional facts contained in the parties' affidavits and other documentation." *Indus. & Crane Servs., Inc. v. Crane & Rig Servs.*, LLC, 2014 WL 6471474, at *2 (quoting *Pervasive Software, Inc.*, 688 F.3d at 219-20). This Court, however, is not required to credit jurisdictional allegations that are merely conclusory. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001); *see also Felch v. Transportes Lar–Mex*, 92 F.3d 320, 326 (5th Cir.1996) (crediting nonconclusory factual jurisdictional allegations to the extent they were not controverted by any of the evidence).

A "federal court sitting in diversity may exercise personal jurisdiction only to the extent permitted a state court under state law." *Allred*, 117 F.3d at 281 (citing *Cycles, Ltd. v. W.J. Digby, Inc.*, 889 F.2d 612, 616 (5th Cir.1989)). Thus, the plaintiff bears the burden of establishing that "(1) the state's long-arm statute applies, as interpreted by the state's courts; and (2) [that] due process is satisfied under the fourteenth amendment to the United States Constitution." *Allred*, 117 F.3d at 281.

### A. To satisfy the Mississippi long-arm statute, Caterpillar must establish that B and M entered into a contract to be performed in Mississippi or conducted business in Mississippi.

The Mississippi long-arm statute provides, in pertinent part, that:

> [a]ny nonresident person . . . who shall make a contract with a resident of this state to be performed in whole or in part by any party in this state, or who shall commit a tort in whole or in part in this state against a resident of this state, or who shall do any business or perform any character of work or service in this state, shall by such act or acts be deemed to be doing business in Mississippi and shall thereby be subjected to the jurisdiction of the courts of this state.

Miss. Code Ann. § 13-3-57 (Rev. 2002). "Mississippi courts interpret this portion of the statute as permitting the exercise of personal jurisdiction over nonresident defendants who have (1) entered into a contract to be performed in Mississippi or (2) conducted business in Mississippi." *Indus. & Crane Servs., Inc. v. Crane & Rig Servs.*, LLC, 2014 WL 6471474, at *2 (citing *Dunn v. Yager*, 58 So. 3d 1171, 1184 (Miss. 2011)).

First, Caterpillar cannot satisfy the long-arm statute under the "contract to be performed in Mississippi" prong. B and M has never entered into a contract to be performed in Mississippi, nor have any of its members. And in its dealings with Prisock, every aspect of B and M's contract to purchase the equipment was performed in Missouri. Prisock delivered the equipment to Missouri; Myers (acting in his capacity as an officer of B and M) paid for the equipment in Missouri; and Prisock delivered the Bill of Sale in Missouri. B and M's only contact with the state of Mississippi was Myers's visit to look at the Excavator, and no contract had formed at that time.

Second, relevant precedent compels this Court to conclude that Myers's visit to Mississippi on behalf of B and M did not constitute "conducting business in Mississippi" under the long-arm statute. A major consideration in deciding whether a nonresident defendant is doing business in Mississippi is whether it "purposefully do[es] some act or consummate[s] a transaction in Mississippi. . . ." *Gross v. Chevrolet Country, Inc.*, 655 So. 2d 873, 877 (Miss. 1995) (citation omitted).

"[F]or the activities of a non-resident to satisfy the statutory 'doing business' requirement, they must be of 'a continuing and substantial' nature." *Medina v. Medina,* 260 F.3d 622, 2001 WL 650466, at *1 (5th Cir. May 29, 2001) (quoting *McDaniel v. Ritter*, 556 So. 2d 303, 309 (Miss. 1989)). "[N]egotiations or solicitation . . . by a nonresident defendant from an out-of-state locus is not 'doing business' in Mississippi." *Peterson v. Test Int'l, E.C.*, 904 F. Supp. 574, 579 (S.D. Miss. 1995) (citations omitted). Additionally, "[m]erely contracting with a resident of the forum state is insufficient to subject the nonresident to the forum's jurisdiction." *McLaurin v. Nazar*, 883 F. Supp. 112, 114 (N.D. Miss. 1995) *aff'd*, 71 F.3d 878 (5th Cir. 1995).

*Roxco, Ltd. v. Harris Specialty Chemicals, Inc.* is similar to the case at bar. 133 F. Supp. 2d 911, 916-17 (S.D. Miss. 2000). In *Roxco*, the nonresident defendant, a specialty chemical company, "maintain[ed] no bank account; employ[ed] no residents; own[ed] no property, real or personal, in Mississippi; and lease[ed] no property in [Mississippi]. *Id.* at 916. Further, the "defendant d[id] not sell products directly to Mississippi customers." *Id.* The business did, however, have out-of-state employees who made occasional visits to Mississippi "to view the application of the defendants' products." *Id.* The defendant also mailed letters and made telephone calls to Mississippi residents to propose contracts. *Id.* In relation to the out-of-state employee visits to Mississippi, the court held that such "transient visits do not constitute doing business under the [long-arm] statute." *Id.* (citing *Mississippi Chemical Corp. v. Vulcan–Cincinnati, Inc.,* 224 F. Supp. 11, 13 (S.D. Miss. 1963), *aff'd,* 338 F.2d 662 (5th Cir. 1964)). Concerning the letters, telephone calls, and proposed contracts, the court held that these activities do not "constitute the type of consistent business contacts contemplated as 'doing business' in the state to warrant personal jurisdiction." *Id*; *see also Allred*, 117 F.3d at 285 (calls to and from forum state insufficient to establish long-arm jurisdiction).

Consistent with these analyses from sister courts, this court finds that neither Myers's two phone calls nor his sole visit to Mississippi on behalf of B and M rises to the level of "continuing and substantial" business conduct that would satisfy the Mississippi long-arm statute as interpreted by the courts.

**IV.     Conclusion**

For the foregoing reasons, this Court orders the dismissal of B and M from the present action for lack of personal jurisdiction.

**SO ORDERED,** this the 6th day of December 2022.

                                                **/s/ Michael P. Mills**
                                                **UNITED STATES DISTRICT JUDGE**
                                                **NORTHERN DISTRICT OF MISSISSIPPI**